**Hazel H. ROBINSON, Plaintiff,**

v.

**MONTGOMERY WARD AND COMPANY, INC.,
Defendant.**

No. C–C–85–564–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Sept. 26, 1986.

---

Regan A. Miller, James, McElroy & Diehl, Charlotte, N.C., for plaintiff.

George R. Hodges, Moore, Van Allen, Allen & Thigpen, Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER came on to be heard before the undersigned Judge, and a jury at Charlotte, North Carolina on September 22 and 23, 1986. The Plaintiff was represented by Regan A. Miller, Esquire, and the Defendant was represented by George R. Hodges, Esquire.

The Plaintiff's claim was that the acts of the Defendant had the effect of depriving her of the rights, privileges and immunities guaranteed to her by the Constitution and laws of the United States because of race, prohibited by Title 42 U.S.C. § 1981, and of depriving Plaintiff of equal employment opportunities because of race in violation of Title VII of the Civil Rights Act of 1964.

The Plaintiff prayed for compensatory damages and a judgment for recovery of punitive damages.

At the close of Plaintiff's evidence the Defendant moved for a directed verdict as to the § 1981 claim, pursuant to Rule 50(a) and as to the Title VII Claim pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Both motions were orally granted by the Court.

Since the Court is required by Rule 52 of the Federal Rules of Civil Procedure to find the facts specially and state separately its conclusions of law as to the Title VII claim, the Court will proceed to do that which will also serve to enunciate the reasons for the Court's ruling as to the 1981 claim.

## FINDINGS OF FACT

(1) The Plaintiff was first hired by the Defendant as a temporary employee from March 1976 to June 1976 and then as a full time employee from June 1976 until her job was eliminated and she was laid off on September 12, 1986.

(2) She began with the Defendant as a key punch operator, and was promoted to computer operator in August of 1979 by Gloria Swanner, the office manager. At that time Paul Roper was the terminal manager at the Defendant's facility on Washburn Avenue in Charlotte, North Carolina.

(3) John Hunt came as terminal manager later that year.

(4) In the year the Plaintiff joined the Defendant there were three shifts and in excess of fifty employees working for the Defendant.

(5) During the last few years the work force had declined until there were only five employees in the office in 1985.

(6) When John Hunt become terminal manager the Plaintiff was a computer operator to which she had been promoted six months earlier.

(7) When Hunt became Terminal Manager, there was no dispatcher title in the office.

(8) In June of 1983 the Defendant closed its facility on Washburn Avenue and contracted with Thurston Motor Lines for its dock activity.

(9) At that time Joseph Matthews (white male) was appointed as dispatcher. As such he was known as a "ready replacement" and had supervisory responsibilities in Hunt's absence although the dispatcher position was not designated officially as having any supervisory responsibilities until June of 1984.

(10) When Matthews was appointed dispatcher, Gloria Swanner (white female) went to Hunt and asked him why she was passed over for job of dispatcher and ready replacement and was told that working on the dock was a man's world where foul language was used. She quit.

(11) In November or December of 1983 the Plaintiff learned that Joe Matthews was leaving the Defendant's employment because of the unpleasant working conditions and turmoil in the office.

(12) In December 1983 the Plaintiff approached Hunt and told him she wanted to be trained for dispatch. Hunt agreed it was a good idea, and that she would be trained but that he wanted people trained in the computer room first.

(13) Plaintiff's Exhibit 3–D, the January 1984 Employee Performance Review, contains the notation that "Employee will be learning various aspects of office." Plaintiff's Performance Review of May 9, 1984 and May 8, 1985, Plaintiff's Exhibits 3–E and 3–F, indicate that Plaintiff will be given the opportunity to learn and understand the traffic clerk and dispatch functions.

(14) Plaintiff was never trained as dispatch. She mentioned it to Hunt again after Joe Matthews left in March or April of 1984.

(15) From March until June of 1984, Hunt and Donna McManus (white female) did the dispatch work. Plaintiff did not complain to Hunt.

(16) In September of 1984 the Plaintiff learned that Donna McManus (white female) had been appointed to dispatch job in June of 1984 for which Hunt had been training her since February of 1984.

(17) After learning on September 20, 1984 that McManus had been appointed dispatcher and assistant to Hunt, the Plaintiff complained to Hunt that she didn't know the position of assistant was open to be filled.

(18) The Plaintiff had never sought any particular promotion with the Defendant and never asked a supervisor to be considered for a promotion except as computer operator. (Plaintiff's deposition, p. 37, lines 1–5 and trial testimony.)

(19) McManus was the only employee who asked to be appointed to dispatcher and since she was qualified and had been performing the duties for three months, Hunt appointed her. Hunt did not know Plaintiff was applying for the job.

(20) Plaintiff was the only employee in the 1984–85 period who was able to perform all the computer operations.

(21) McManus was more qualified to do the job of dispatcher when Matthews left than Plaintiff was (Plaintiff's trial testimony.)

(22) Hunt, the terminal manager, had made two remarks which the Plaintiff contends were racist. One was that he called the Plaintiff "black beauty" from time to time, until she asked him to quit which he did. The other was during the Jesse Jackson campaign the Plaintiff overheard Hunt say that "Blacks couldn't succeed at anything but sports."

There should never be any offensive remarks made about anyone because of his or her race, religion, sex, or national origin. However, not every such remark rises to the level of constituting a racist remark indicating a racial bias by the speaker with consequent adverse employment decisions.

(23) This office was a soap opera writer's dream, with accusations of who was the father of whose child, resulting in tension and employees leaving because of difficult working conditions. Testimony was that since 1983 at least three employees quit, Sue Mack, (white female) Joseph Matthews (white male) and Gloria Swanner (white female). Apparently, this resulted, in the case of Gloria Swanner, because she was not appointed as dispatcher and ready replacement for Hunt and because of the disruption caused by one employee, Donna McManus, which was apparently condoned by the terminal manager, John Hunt, for whatever reason, but this Court does not find that this evidence indicates racial animus toward Plaintiff by Hunt, or anyone else in the office.

## CONCLUSIONS OF LAW

(1) The Court has jurisdiction of this action pursuant to Title 28 U.S.C. §§ 1331 and 1343 and Title 42 U.S.C. § 1981 and 2000e–2(a).

(2) The Plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, at 252–53, 101 S.Ct. 1089, at 1093–94, 67 L.Ed.2d 207; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793, 802, 93 S.Ct. 1817, 1820, 1824, 36 L.Ed.2d 668 (1973). To establish a *prima facie* case, the Plaintiff must prove: actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were "based on a discriminatory criterion illegal under the Act." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *see also, Texas Department of Community Affairs v. Burdine, supra; McDonnell Douglas Corp. v. Green, supra.*

(3) This is a disparate treatment case, and a *prima facie* case may be established by direct evidence of discrimination or by indirect evidence whose cumulative probative force, apart from the presumption's operation, would suffice under the controlling standard to support as a reasonable probability the inference that but for the Plaintiff's race he would have been promoted. *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 242 (4th Cir.1982). Without such evidence, the claimant must resort to the *McDonnell Douglas* presumption

with all of its ensuing complexities. *Holmes v. Bevilacqua,* 794 F.2d 142, 146.

(4) There is no direct or indirect evidence of discrimination against the Plaintiff.

■ (5) When there is no direct or indirect evidence of discrimination then the Plaintiff must rely on the proof scheme set out in *McDonnell Douglas v. Green, supra.* This may be done by showing (i) that she belongs to a racial minority; (ii) that she applied and was qualified for a job for which the employer was seeking applicants; (iii) that despite her qualification she was rejected; (iv) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. It is conceded that Plaintiff belongs to a racial minority. However, there is no evidence that she applied for the job of dispatcher. She asked to be trained as dispatcher. McManus was training as dispatcher before Matthews left. Even if requesting to be trained for dispatcher were to be construed as asking for the job, the Plaintiff testified that when Joe Matthews left in March of 1984, McManus was more qualified for dispatcher than Plaintiff was, since McManus had already been trained.

(6) The Plaintiff simply has not carried her burden as to the second, third, or fourth prongs of *McDonnell Douglas.*

(7) Any finding of fact deemed a conclusion of law shall be so deemed and any conclusion of law deemed also to be a finding of fact is so deemed.

IT IS ORDERED AND DECREED that judgment be entered for the Defendant on both the Title VII claim and the Section 1981 claim and that the Plaintiff's cause of action be dismissed, and that each party pay its own costs including attorney's fees.