Hazel H. **ROBINSON,**
**Plaintiff-Appellant,**

v.

**MONTGOMERY WARD AND COMPANY, INC., Defendant-Appellee.**

**No. 86–3156.**

United States Court of Appeals,
Fourth Circuit.

Argued May 6, 1987.

Decided July 14, 1987.

Regan A. Miller, Charlotte, N.C., for plaintiff-appellant.

George R. Hodges (Moore & Van Allen, Charlotte, N.C., on brief) for defendant-appellee.

Before WIDENER and HALL, Circuit Judges, and HOFFMAN, Senior District Judge for the Eastern District of Virginia, sitting by designation.

WALTER E. HOFFMAN, Senior District Judge:

The plaintiff-appellant, Hazel H. Robinson, brought this individual employment discrimination action against the defendant-appellee, Montgomery Ward and Company, Inc. Robinson alleged violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., and of 42 U.S.C. § 1981 arising from the company's decision to promote a white female instead of the plaintiff, a black female, to the position of dispatcher.

The Honorable Robert D. Potter, C.J., heard Robinson's Title VII claims; a jury heard the Section 1981 claims. At the close of the plaintiff's evidence the district court granted Montgomery Ward's motion for a directed verdict on the Section 1981 claims and motion for involuntary dismissal on the Title VII claims, 644 F.Supp. 890.

After entering Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52, the district court entered judgment for the defendant on both the Title VII and the Section 1981 claims, holding that Robinson had failed to offer any direct or indirect evidence of racial discrimination.

We AFFIRM the judgment of the district court.

FACTS

Hazel H. Robinson was first hired by Montgomery Ward as a temporary employee from March 1976 to June 1976. Subsequently, Robinson was a full time employee of Montgomery Ward from June 1976 until her job was eliminated and she was laid off on September 12, 1986. Initially the plaintiff was hired as a key punch operator. In 1979 the office manager, Gloria Swanner,

promoted Robinson to computer operator, a position for which Robinson was largely self-trained. At the time the plaintiff began to work for Montgomery Ward at its Washburn Avenue facility in Charlotte, North Carolina, the company employed in excess of fifty persons there, working in three shifts. In June 1983 the defendant closed its facility on Washburn Avenue and contracted with Thurston Motor Lines for its dock activity.

Simultaneous with this change, Montgomery Ward created a new position, dispatcher, a "ready replacement" for the terminal manager, John Hunt. Joseph Matthews, a white male, was appointed dispatcher, a position which had no official supervisory responsibilities attached until June 1984. At the time of Matthews's appointment, Gloria Swanner asked Hunt why she was passed over for the dispatcher position. When Hunt responded that the dock was a man's world where foul language abounded, Swanner resigned. In the waning months of 1983, the plaintiff learned that Matthews planned to leave Montgomery Ward because of his dissatisfaction with the working conditions. At this point, Robinson requested that she be trained in the skills necessary to become the dispatcher. Hunt's response was that he intended to "cross-train" all of the five employees remaining so that they could assume each other's responsibilities when necessary. Although Hunt did not deny Robinson the opportunity to be trained as dispatcher, he did delay her training until she trained the others in computer operations. The plaintiff was the only employee sufficiently knowledgeable of computer functions to be able to train others. Robinson's Employee Performance Reviews from January and May 1984 indicate an intention to train her. After Joseph Matthews left in the spring of 1984, Robinson reinstituted her training request. She was never trained, however.

In the meantime, a white female, Donna McManus, and John Hunt carried out the duties of dispatcher. The plaintiff did not complain. On September 20, 1984, Robinson learned that in June 1984 McManus had been appointed dispatcher, a position for which Hunt had been training her since February 1984. Although Robinson did ask for training, she did not apply for the position of dispatcher. Robinson alleged at trial that she did not know that the position was open. Robinson did not ask to be considered for a promotion of any sort during this time period. Donna McManus did apply for the position and was more highly qualified than was the plaintiff for the position of dispatcher because she had been trained for same.

The plaintiff also testified that John Hunt called her "Black Beauty" on certain occasions during the time period that she worked at the Washburn Avenue facility (before June 1983) but that he ceased doing so when she asked him to. Further Robinson testified that while Jesse Jackson was running for President (in 1983–1984) she overheard Hunt comment that blacks could not succeed at anything but sports. Various witnesses testified as to the existence of tension and animosity in the office; however, neither Robinson nor the other witnesses said that any ill will was directed toward Robinson.

## PROPRIETY OF INVOLUNTARY DISMISSAL AS TO TITLE VII CLAIMS

Adequacy of the trial court's findings of fact and conclusions of law. In all actions tried upon facts without a jury, pursuant to Fed.R.Civ.P. 52, "... the court shall find the facts specially and state separately its conclusions of law thereon, ..." The Rule further states that findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous. See also, *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Holmes v. Bevilacqua*, 794 F.2d 142, 147 (4th Cir.1986). In the present case, a careful review of the trial court record and of Judge Potter's specifically enumerated 23 factual findings establishes that the district court's factual findings accurately represent the testimony given. Furthermore, the trial court's conclusions of law are founded upon recognized and precedential employment discrimination law.

■ Effect of shifting the burden of proof on Fed.R.Civ.P. 41(b). Although there exists a three-part allocation of proof in Title VII cases,[1] the court is not precluded from granting a defendant's Fed.R.Civ.P. 41(b) motion for involuntary dismissal. *Gaballah v. Johnson*, 629 F.2d 1191, 1200 (7th Cir.1980); *Sime v. Trustees of California State Univ. & Colleges*, 526 F.2d 1112 (9th Cir.1975). Pursuant to Rule 41(b), if the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). The adequacy of the trial court's findings of fact and conclusions of law indicates that Judge Potter was fully justified in granting an involuntary dismissal of the plaintiff's Title VII claims at the close of the plaintiff's evidence. In the case *sub judice* the plaintiff called as one of her witnesses John Hunt, Montgomery Ward's terminal manager. Hunt explained to the court his decision to promote Donna McManus, a white female, rather than the plaintiff. Consequently, the court actually had before it the explanations of both parties when it granted the motion for involuntary dismissal.

■ Application of the McDonnell Douglas test. In deciding that the plaintiff had not proved a *prima facie* case of discrimination, the district court applied the test set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The plaintiff met only one prong of the four-element test. Robinson established that she is black and thus a member of a protected minority as required by the first element of *McDonnell Douglas*. Robinson was able to prove neither that she applied for, nor that she was qualified for, the job of dispatcher; thus she did not meet the second element required by *McDonnell Douglas*. Because the plaintiff admitted that the white female who was

hired to fill the dispatcher position had higher qualifications than she and that she did not apply for the job, the third element (that despite her qualifications, she was rejected) is irrelevant to this case. The fourth element, that, after her rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications, is likewise irrelevant here. Since Robinson did not establish a *prima facie* case, she is not entitled to the presumption of intentional discrimination which arises when the *McDonnell Douglas* test is met.

■ Since Robinson did not apply, she was not rejected. Although a plaintiff who did not apply for a position is not foreclosed from success in an employment discrimination action, in such a situation the plaintiff must establish that she was inhibited from applying because of the employer's discriminatory practices. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In the case at bar, the plaintiff admitted that she did not apply for the position but asserted no argument whatsoever that she was in any way inhibited from making an application by Montgomery Ward's alleged discriminatory practices. Plaintiff's assertions about racial remarks and training discussed *infra*, do not rise to the level of proof required for a showing of intentional discrimination. Consequently, the district court was entirely correct in finding that the plaintiff had not carried her burden as to the second, third, and fourth elements of *McDonnell Douglas*.

## PROPRIETY OF DIRECTED VERDICT AS TO SECTION 1981 CLAIMS

■ In 1943 the Supreme Court announced the standard that courts were to use in directing verdicts:

---

1. In order for a plaintiff to prevail in a Title VII action, the court must first find that the plaintiff has proved a *prima facie* case by a preponderance of the evidence. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094 n. 7, 67 L.Ed.2d 207 (1981). If the court so finds, then secondly the court must consider the defendant's explanation of or justi-

fication for the presumptively discriminatory action or practice. Third, the burden of persuasion shifts again to the plaintiff to prove by a preponderance of the evidence that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence.

When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict. By such direction of the trial, the result is saved from the mischance of speculation over legally unfounded claims.

*Brady v. Southern Ry. Co.*, 320 U.S. 476, 479–480, 64 So.2d 232, 88 L.Ed. 239 (1943). A directed verdict is improper in those cases in which sufficient evidence is in conflict so that reasonable men could reach different conclusions. 5A *Moore's Federal Practice* § 50.02[1]. Both the trial court and the appellate court must consider the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion. *St. Paul Fire & Marine Insurance Company v. Vaughn*, 779 F.2d 1003, 1008 (4th Cir.1985); *Whalen v. Roanoke County Bd. of Sup'rs.*, 769 F.2d 221, 224 (4th Cir.1985); *Mays v. Pioneer Lumber Corp.*, 502 F.2d 106 (4th Cir. 1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1125, 43 L.Ed.2d 398 (1975). As previously discussed, the plaintiff did not establish a *prima facie* case based upon the *McDonnell Douglas* required elements. Therefore, the directed verdict was appropriate.

■ As detailed by the district court, a plaintiff's evidence may carry the original production burden without need to invoke the *McDonnell Douglas* presumption. To have done so, Robinson was required to present either direct or circumstantial evidence sufficient to support an inference that there existed a reasonable probability of intentional discrimination. *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 242 (4th Cir.1982). In asking the jury to find an inference of intentional discrimination, Robinson put on evidence of certain racial remarks made by either John Hunt or Donna McManus. The plaintiff testified that Hunt called her "Black Beauty" on certain occasions; Robinson also said that when she asked Hunt to stop, he did so. The trial record also shows that Donna Mc-

Manus had referred to another black employee, not the plaintiff, as "nigger." Testimony was conflicting as to whether Hunt reprimanded McManus for her statement. Nevertheless, the record did establish that on one occasion after using the word "nigger" McManus went into Hunt's office, later emerging tearfully. From this uncontradicted testimony, the court may reasonably infer that McManus was reprimanded. At any rate, no evidence exists that McManus ever addressed any racially derogatory remark to the plaintiff Robinson. Further, occasional or sporadic instances of the use of racial or ethnic slurs in and of themselves do not constitute acts of racial discrimination. *Torres v. Oakland County*, 758 F.2d 147 (6th Cir.1985). A determination as to the impact and relevance of racial remarks must be made on a case-by-case basis after consideration of the totality of the circumstances. *Gilbert v. City of Little Rock, Arkansas*, 799 F.2d 1210 (8th Cir.1986). Whereas a spirit of camaraderie was conspicuously absent from the total picture of the Montgomery Ward office as painted by the witnesses at the trial level, the trial court failed to find convincing evidence of intentional discrimination. We concur that the plaintiff did not present strong, direct evidence of intentional discrimination through her evidence of racial remarks. See *Lee v. Russell County Board of Education*, 684 F.2d 769, 774 (11th Cir.1982).

■ Plaintiff's counsel argues strenuously that Montgomery Ward's failure to train Robinson for the position of dispatcher was either direct or indirect evidence of intentional discrimination just as failure to promote her to the position was. However, a person who qualified for a position but who would require training does not satisfy all of the elements required to establish a *prima facie* case. *Scott v. Coca-Cola Bottling Co.*, 583 F.Supp. 191 (E.D.Mo.1984). See *Pacheco v. Advertisers Lithographing, Inc.*, 657 F.2d 191, 193, 27 F.E.P. Cases 133 (8th Cir.1981). In *Ramsey v. American Air Filter Co., Inc.*, 772 F.2d 1303, 1309 (7th Cir.1985), upon which the plaintiff relies in regard to the training issue, Ramsey was specifically denied the

**798**

opportunity for training. Further, *Ramsey* indicates that the employer manipulated another person into bidding for the position available. These two facts are distinguishable from the situation in the case at bar. John Hunt did not forever deny Robinson the opportunity to be trained as dispatcher; there is no evidence that Hunt was responsible for McManus's application for the position of dispatcher. While counsel's argument was clearly and carefully rendered, the facts of the case regarding training simply do not provide adequate direct or indirect evidence of discrimination as required by *Lovelace v. Sherwin-Williams*, 681 F.2d at 242. The terminal manager, Hunt, called as a witness by the plaintiff, provided a convincing explanation based upon sound business reasons of his plan for cross-training his five employees.

Robinson also asserts that Montgomery Ward's failure to post notice of job openings is either direct or indirect evidence of intentional discrimination, citing *Brown v. Gaston County Dyeing Machine Company*, 457 F.2d 1377 (4th Cir.), *cert. denied*, 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972). As the defendant correctly points out, in disparate impact cases in which statistical disparities between employment opportunities for blacks and whites become relevant, the posting of notices regarding vacancies can be important. However, in a five-person office the actual posting of a notice surely is superfluous. In such a small office, the personnel can hardly escape noticing when someone resigns or accepts job interviews away from the office. In fact, the trial testimony reveals that Robinson was aware that Joe Matthews, the dispatcher, was interviewing for other jobs. Robinson also knew that Hunt was interviewing persons to replace Matthews. Yet the record shows that Robinson did not apply for the position. The court cannot reasonably infer that her failure to apply arose from the company's failure to post a notice of the vacancy of the position. In sum, none of the direct or indirect evidence which the plaintiff offers is adequate to persuade the court that Montgomery Ward's decision not to promote Robinson to dispatcher was motivated by intentional discrimination. Consequent-

ly, the directed verdict on the Section 1981 claims was correctly granted.

## EXCLUSION OF EVIDENCE ON LOST WAGES

The district court admitted the plaintiff's evidence of lost wages up to the maximum pay rate allowed by Montgomery Ward for the position of dispatcher. However, the trial court excluded a calculation of lost wages based on the assumption that if the plaintiff had been promoted to the position of dispatcher, she would have received several other promotions and successive wage increases. Apparently, Donna McManus did receive these promotions and salary increases. Because we have previously decided that Robinson did not present viable bases for her Section 1981 claims, we need not reach the issue of lost wages or the calculation of damages. Therefore, we decline to consider whether the district court properly excluded certain evidence regarding lost wages.

## CONCLUSION

For all of the foregoing reasons, the decision and judgment of the district court are AFFIRMED.

AFFIRMED.