892 F.2d 74
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Joseph E. BROWN, Jr., Plaintiff-Appellant,
v.
Walter TURNER, individually, and as a Florence County Deputy
Sheriff; Florence County Sheriff's Department,
Florence County; William C. Barnes,
Florence County Sheriff,
Defendants-Appellees.
 No. 88-2969.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 4, 1989.
Decided: Dec. 1, 1989.
 
 Daryl James Corbin, for appellant.
 James Carlisle Rushton, III (Mary Layton Wells, Hyman, Brown, Jeffords, Rushton & Hatfield; Joseph C. Coleman; Brian Dumas, on brief), for appellees.
 Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and W. EARL BRITT, Chief United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Plaintiff's amended complaint alleges that defendants, acting under color of state law, violated his constitutional rights in contravention of 42 U.S.C. § 1983. It also alleges pendent state law claims against certain defendants for civil conspiracy, intentional infliction of emotional distress, negligence and slander. At the conclusion of the evidence, the district court granted defendants' motions for directed verdict stating that plaintiff had not proved defendants acted under color of state law or the conduct violated any recognized constitutional right. Plaintiff appeals.
 
 
 2
 Plaintiff's evidence at trial tended to show that he is employed by the city of Lake City, South Carolina, as its Economic Development Director and Executive Secretary of the Lake City Development Corporation. Plaintiff first met defendant Walter Turner (Turner) around 1984 or 1985 in connection with his divorce from Pam Brown. Plaintiff accused Turner of having an affair with Pam. After the divorce was final in 1986, Turner and Pam began dating.
 
 
 3
 On 17 May 1986, Turner called plaintiff and offered to sell him proof of Pam's adultery for $5,000.00. Plaintiff refused the offer.
 
 
 4
 Turner became a deputy sheriff of Florence County on 3 September 1986. On 20 October 1986, plaintiff returned to work from vacation and received a package containing photographs of Pam and Turner and two notes from Pam to Turner. Turner admitted delivering the package.
 
 
 5
 A few days after receiving the package, plaintiff discovered in his automobile a letter from Turner which described seeing plaintiff and Pam having sex, called Pam a whore and described Pam's preferred sexual positions. Turner also related certain personal "secrets" about plaintiff that Pam had shared with him. Turner testified that he sent the letter to show plaintiff that Pam Brown was mistreating both men and not to hurt plaintiff.
 
 
 6
 Before Turner became a deputy, plaintiff had received no more than three or four telephone calls from Turner. After the October letter, Turner's telephone contacts became "constant and chronic." Over the ensuing months, Turner demanded $5,000.00 from plaintiff, threatened to get plaintiff, stated "your ass is mine", threatened to burn plaintiff's house with his mother in it, wrote plaintiff's mother an obscene letter and threatened sexual harm to plaintiff's son.
 
 
 7
 In November 1986, plaintiff met with Sheriff Barnes about the continued harassment. Plaintiff testified that he showed the sheriff the photographs and letters and told the sheriff of the telephone calls and that a deputy was following plaintiff to and from work. Sheriff Barnes testified that he indicated to plaintiff that he had already talked to Turner and that plaintiff did not ask him to take further action. The sheriff also testified that he was not aware of the demand for money or the threats and telephone calls until this lawsuit was filed; plaintiff only complained of the photographs that were delivered in the package.
 
 
 8
 On 12 January 1987, Turner, dressed in his deputy uniform, confronted plaintiff in plaintiff's boss' office. Turner placed his hand on his police weapon and threatened to smash plaintiff's face. Plaintiff's boss went to get police assistance and Turner left. After this incident, plaintiff went to the office of a business associate, Wilbur Brown. Wilbur Brown contacted the Chief Deputy of the Florence County Sheriff's Department, Franklin McAllister, and told him of plaintiff's fear of Turner.
 
 
 9
 On 29 January 1987, plaintiff noticed Turner, dressed in his deputy uniform, riding back and forth in front of plaintiff's office in a deputy vehicle. Turner waved to plaintiff and made a vulgar gesture. The Chief of Police in Lake City, Michael Brumbles, reported both the 12 January incident and this incident to the sheriff's department.
 
 
 10
 On 26 March 1987, plaintiff arrived at his office and noticed Turner, wearing his deputy uniform, standing at the entrance to the building. Plaintiff drove around the building and used the back entrance. Turner returned to his deputy car and moved the car near the building. Turner then opened the door, looked up at plaintiff's window, made a gesture to plaintiff and mouthed "your ass is mine."
 
 
 11
 Plaintiff testified that he was afraid Turner was going to set him up and plant narcotics in his car. He was also afraid Turner was going to arrest him. However, there was no evidence that Turner ever charged plaintiff with a crime or threatened to arrest him.
 
 
 12
 At trial, plaintiff presented evidence of damages which is not relevant to the issues presented on appeal. He also attempted to introduce evidence of the sheriff's department's hiring, training and discipline practices. On the ground that it was not relevant, the court did not allow this evidence.
 
 
 13
 Plaintiff contends the trial court erred in granting defendants' motions for directed verdict. He also assigns error to the exclusion of evidence regarding hiring, training and discipline practices. We have reviewed plaintiff's contentions, find they have no merit and affirm the decision of the district court.
 
 I.
 
 14
 To establish a claim under 42 U.S.C. § 1983, the plaintiff must prove two essential elements: (1) that the conduct complained of was committed under color of state law and (2) that this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution and laws of the United States. Basista v. Weir, 340 F.2d 74, 79 (3d Cir.1965). The district court found that plaintiff had not shown either element and granted defendants' motions for directed verdict.
 
 
 15
 A directed verdict is improper in those cases in which sufficient evidence is in conflict so that reasonable men could reach different conclusions. Both the trial court and the appellate court must consider the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion.
 
 
 16
 Robinson v. Montgomery Ward and Co., Inc., 823 F.2d 793, 797 (4th Cir.1987), cert. denied, 108 S.Ct. 773 (1988) (citations omitted). The question before us is whether the district court erred in concluding as a matter of law that there was no evidence of state action or of a constitutionally protected right. We hold there was no evidence of an act committed under color of state law. The district court did not err in granting the motions for a directed verdict on this ground. In light of this holding, we do not reach plaintiff's other contentions.
 
 II.
 
 17
 In United States v. Classic, 313 U.S. 299 (1941), the Supreme Court stated that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." Id. at 326.
 
 
 18
 It is clear that under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it.
 
 
 19
 Screws v. United States, 325 U.S. 91, 111 (1945) (emphasis added). Applying these decisions, this Court has stated that "[i]t is plain that a state officer is not necessarily acting in his official capacity merely because he is clothed in official garb." Robinson v. Davis, 447 F.2d 753, 759 (4th Cir.1971), cert. denied, 405 U.S. 979 (1972).
 
 
 20
 In Johnson v. Hackett, 284 F.Supp. 933 (E.D.Pa.1968), the plaintiff alleged claims under 42 U.S.C. §§ 1983, 1985 and 1986 against the town of Bristol, Pennsylvania, its Board of Commissioners, the Chief of Police and two police officers. The district court determined the complaint failed to charge acts committed under color of law and therefore failed to state a claim under Section 1983. The court stated:
 
 
 21
 What plaintiff's position boils down to is that any act committed by a police officer while on duty and in uniform is under "color of law", even if the act is wholly unrelated to the performance of any of his duties. This contention attempts to equate "clothed with the authority of state law" to "wearing a policeman's uniform." Of course they are not the same. It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law. If the officer was enabled to do what he did because of the authority of his office, even if what he did constituted an abuse of that authority, either by the excessiveness of his conduct or because the act was not actually, although apparently, authorized, the act is under "color of law."
 
 
 22
 Id. at 937.
 
 
 23
 In this case, the evidence shows the situation between plaintiff and Turner was of a purely personal nature. Plaintiff testified that the phone calls intensified after Turner became a deputy and that he was afraid Turner would use his position to frame plaintiff for a narcotics violation. Turner also threatened plaintiff while patting his deputy weapon and was wearing his deputy uniform and driving a deputy car when some of the incidents occurred. However, Turner and plaintiff had a history of animosity beginning at the time of the Brown divorce when plaintiff accused Turner of having an affair with Pam. There is no evidence that Turner was acting under color of state law or that the actions involved were made possible by his cloak of authority or misuse of that authority. The district court did not err in granting the motions for directed verdict on the ground that there was no state action.
 
 
 24
 The decision of the district court is affirmed.
 
 
 25
 AFFIRMED.