**UNITED STATES of America, Plaintiff,**

v.

**CITY OF WARREN and City of Warren Police and Fire Civil Service Commission, Defendants.**

**No. 86–CV–75435–DT.**

United States District Court,
E.D. Michigan, S.D.

Feb. 14, 1991.

See also 759 F.Supp. 355.

Michael Ricciuti, U.S. Dept. of Justice, Civ. Rights Div., Washington, D.C., L. Michael Wicks, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Walter A. Jakubowski, City Atty., Warren, Mich., Walter B. Connolly, Jr., Detroit, Mich., James Hacker, Mount Clemens, Mich., for defendants.

## OPINION

DUGGAN, District Judge.

This is a Title VII action instituted in 1986 by plaintiff, United States of America ("Government"), against defendant, City of Warren ("Warren" or "City"). Presently before the Court is the Government's motion for preliminary injunction which seeks to enjoin Warren from using a firefighter "eligibility list" ("1989 eligibility list") created as a result of a recruitment effort for fire personnel undertaken by Warren in September, 1989.

## I. BACKGROUND

On April 12, 1990, the Government filed a motion with this Court asking that Warren be enjoined from hiring fire personnel from the 1989 eligibility list. In its April 12 motion, the Government alleged, and continues to allege, that the 1989 eligibility list was the product of a firefighter recruitment effort by Warren that was intended to exclude blacks from employment in the City's fire department. In other words, the Government believes that the 1989 firefighter recruitment was intended to disparately treat blacks in violation of Title VII of the Civil Rights of 1964, *as amended,* 42 U.S.C. § 2000e, *et seq,* by keeping them from applying for firefighter jobs in the City.

As support for its disparate treatment claim as to the 1989 eligibility list, the Government points to the alleged conduct of the Mayor of Warren, Ronald Bonkowski. Specifically, the Government contends that Mayor Bonkowski refused to allow the

City of Warren Police and Firefighter Civil Service Commission from implementing its alleged plan to advertise the firefighter recruitment in two media outlets geared towards blacks—the *Michigan Chronicle* newspaper and WJLB radio. This act by Mayor Bonkowski, the Government argues, was for purposes of excluding blacks from applying for positions (and eventually being hired) as firefighters in Warren.[1]

Warren disputes the Government's contentions and first argues that Mayor Bonkowski's refusal to use the *Michigan Chronicle* and WJLB was based on valid, nondiscriminatory reasons, to wit: (1) cost-effectiveness, i.e., that the City was already going to advertise in the *Free Press*, a paper the City believed reached the black community even more effectively than the *Chronicle* or WJLB; and (2) advice from private counsel for the City that a refusal to use such media in the recruitment would not violate Title VII. Additionally, Warren argues that no Title VII violation occurred as a result of the September, 1989 recruitment and that even if such a violation is assumed, there can be no "victims" of such discrimination under the facts of the issue as presented by the Government.

## II. DISCUSSION

Initially, it must be stressed that the motion presently before the Court is for a preliminary injunction. This consideration is the leading guide for the Court in its disposition of this matter.

On September 24, 1990, this Court entered an order ("September 24 Order") which provided for the following:

(1) That Warren would eliminate the 1989 eligibility list and that no additional firefighters would be hired from it.

(2) That Warren would promptly begin recruiting for a new firefighter list and that such recruiting be approved by the Court and include advertising in the *Michigan Chronicle.*

(3) That the Government would retain any claims it has regarding the legality

of the list and could seek, at trial, any relief it believes available to it based on Warren's development and use of such list.

Warren has since "eliminated" the 1989 eligibility list—it no longer uses such list as a basis for hiring new firefighters into its Fire Department.

### A. Mootness

 This Court must deny the injunctive relief sought by the Government. Simply put, the September 24 Order has rendered moot the original purpose of the Government's motion—its desire to prevent Warren from hiring firefighters from the allegedly discrimination-based 1989 eligibility list.

Admittedly, Warren did make some hirings from this list before the date of the September 24 Order. However, this fact alone does not mandate the injunctive relief the Government seeks. No more hirings will ever be made from the eligibility list. Therefore, there is no need to enjoin its use. And, the September 24 Order expressly allows the Government to challenge the legality of the recruitment at trial.

### B. Preliminary injunction standards

This Court having benefit of not only the parties' pleadings, but also their arguments and evidence presented at the evidentiary hearing on the present motion which was conducted September 24–27, 1990, concludes that all of the requirements for injunctive relief have not been shown by the Government.

Under Sixth Circuit law, a party seeking a preliminary injunction is entitled to such relief if he/she can show: (1) a strong or substantial likelihood of success on the merits, (2) irreparable injury and the absence of an adequate remedy at law, (3) that the threatened harm to the party seeking the injunction outweighs the harm the injunction may cause, and (4) that the granting of the injunction will serve the

---

**1.** The Government also contended that Mayor Bonkowski's elimination of the Police and Firefighter Civil Service Commission in 1990 was a violation of Title VII. At the hearing on this issue in September, 1990, the Court rejected this claim.

public interest. *NAACP v. Mansfield*, 866 F.2d 162, 166 (6th Cir.1989).

■ This Court finds that the Government has not shown that an "irreparable injury" will occur if injunctive relief is not granted. If the Government proves at trial that Warren disparately treated blacks in conducting its 1989 firefighter recruitment, and if the Government can then bring forward identifiable victims who can prove a claim, then adequate relief will be available to compensate such victims for their injury. For example, backpay could be awarded to such victims.

■ Also, this Court concludes that the Government has not shown a strong or substantial likelihood of success as to its claim concerning the 1989 eligibility list. There are two considerations upon which this conclusion is based: First, whether Mayor Bonkowski intended to discriminate against blacks by deciding not to use the *Michigan Chronicle* or WJLB as advertising vehicles for the 1989 firefighter recruitment remains subject to serious dispute by both parties. For example, Mayor Bonkowski has indicated by affidavit that he refused to use the *Chronicle* for cost-effectiveness reasons. *See* Affidavit of Ronald L. Bonkowski, Attachment 3 to Defendant City of Warren's Brief as to Whether Retroactive Relief is Available in This Discrimination in Recruitment Case.

Second, even if there is some form of discriminatory intent found in Mayor Bonkowski's actions with regard to his refusal to use the *Chronicle* and WJLB, it is uncertain as to whether the Government will be able to come forward with victims of such discrimination. Simply put, Warren decided to advertise the 1989 firefighter recruitment in the *Free Press* instead of the *Chronicle* and WJLB.[2] In this Court's opinion, there remain substantial questions as to whether the Government can show that potential black firefighter applicants would *only* have looked for such jobs in the

*Chronicle* and/or listened for such jobs on WJLB.

### C. Availability of retroactive relief

At the hearing conducted on this motion in September, 1990, a disagreement arose between the parties concerning the issue of whether, under Title VII, nonemployees who had no notice of job openings can ever be nonapplicant victims entitled to retroactive relief. Warren argues that this issue must be answered in the negative and that, as a result, the Government's motion for a preliminary injunction should be denied. The Government argues the opposite. Both parties have extensively briefed the issue in their current pleadings relating to the present motion.

As the statement of its view of the law on this issue Warren concludes: "[F]or a non-employee to establish that he or she is a 'deterred' applicant, the individual must be able to show that he or she had knowledge of the employer's alleged discriminatory practice or reputation and that he or she was discouraged from applying for the job because of that practice or regulation." Defendant City of Warren's Brief as to Whether Retroactive Relief is Available in This Discrimination in Recruitment Case, at p. 8.

The basic premise Warren uses in arriving at its conclusion of law is that there can be only two kinds of victims in a Title VII discrimination case—actual victims and deterred victims. Warren states that the former are "those about whom the employer made a decision or took action, *e.g.*, the individual who actually applied for a job and was rejected." The latter, according to Warren, are those "who can show that [they were actually] deterred or discouraged from applying for the job by the employer's discriminatory practices." Defendant City of Warren's Brief as to Whether Retroactive Relief is Available in This Discrimination in Recruitment Case, at p. 8.

**2.** Warren asserts that it also "advertised" the 1989 firefighter recruitment in other sources, i.e., the MESC, the NAACP, the Urban League, and Wayne Community College. Defendant

City of Warren's Brief as to Whether Retroactive Relief is Available in This Discrimination in Recruitment Case, at p. 15. The Government does not dispute this assertion.

From its concept of "deterred [non]applicant" Warren goes on to interpret the Supreme Court's discussion of nonapplicant Title VII victims in the landmark *Teamsters* decision [3] and its subsequent interpretation by the courts as standing for the proposition that, for purposes of Title VII, a deterred applicant can only be discriminated against if he/she knows he/she has been discriminated against (or if he/she knows the employer has a reputation of discrimination). From this, Warren proceeds to state that if the deterred applicant had no knowledge of the discrimination, he/she will not have standing to make a claim against the employer. Defendant City of Warren's Brief as to Whether Retroactive Relief is Available in This Discrimination in Recruitment Case, at pp. 7–9.

Warren's reasoning in support of its conclusion of law on this issue is seriously flawed.

In *Teamsters*, the Supreme Court set forth the bedrock standards required for nonapplicant discriminatees to make a claim under Title VII. The Court stated:

> A nonapplicant must show that he was a potential victim of unlawful discrimination. Because he is necessarily claiming that he was deterred from applying for the job by the employer's discriminatory practices, his is the not always easy burden of proving that he would have applied for the job *had it not been for those practices.*

*Teamsters*, 431 U.S. at 367–68, 97 S.Ct. at 1871 (emphasis added). The Court further stated:

> Resolution of the nonapplicant's claim, however, requires two distinct determinations: that he would have applied but for discrimination and that he would have been discriminatorily rejected had he applied.

*Id.*, 431 U.S. at 368, n. 52, 97 S.Ct. at 1871, n. 52.

▮ This language does not require a "deterred" nonapplicant to have knowledge of an employer's discriminatory practice in order to make out his/her Title VII claim. All the nonapplicant need show is that "had it not been" for the employer's discriminatory practice, he/she would have applied for the job and "would have been discriminatorily rejected" for the job. *Id.* Knowledge of the employer's practice is not an element to this type of claim.

Further, the case Warren primarily relies upon as support for its conclusion as to this issue, *Robinson v. Montgomery Ward & Co.*, 823 F.2d 793 (4th Cir.1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988), does not require an element of knowledge for a nonapplicant claim. In *Robinson*, the Fourth Circuit ruled that an employee who did not prove that she applied for and was qualified for a job had not established a prima facie case of discrimination under Title VII. *Id.* at 796. In so ruling, the Fourth Circuit commented:

> Since Robinson [the employee-plaintiff] did not apply [for the job], she was not rejected. Although a plaintiff, who did not apply for a position is not foreclosed from success in an employment discrimination action, in such a situation the plaintiff must establish that she was inhibited from applying because of the employer's discriminatory practices. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In the case at bar, the plaintiff admitted that she did not apply for the position but asserted no argument whatsoever that she was in any way inhibited from making an application by Montgomery Ward's alleged discriminatory practices.

*Id.* Such language does not impose a requirement of knowledge of the employer's discriminatory practice on a nonapplicant Title VII plaintiff.

If Warren's knowledge requirement were taken to its logical end, a deterred nonapplicant could never have standing to challenge an employer's discriminatory recruitment practice where that practice was so

---

**3.** *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

cleverly designed and so successfully implemented that it kept the nonapplicant from even knowing of the recruitment. That is to say, even where the nonapplicant was qualified for the job, would have applied for it, and would have been discriminatorily rejected, if such nonapplicant had no knowledge of the job because of the employer's discriminatory practice, he/she could not, according to the view set forth by Warren, challenge that practice under Title VII. In sum, Warren's knowledge requirement would serve to shield the thorough discriminator from Title VII liability.

As further support for its conclusion on this issue, Warren asserts that "[a]ctual or threatened injury is essential to establish that the individual has standing to challenge the employer's actions, and the injury must be direct and individualized." Defendant City of Warren's Brief as to Whether Retroactive Relief is Available in This Discrimination in Recruitment Case, at p. 9. From this, Warren concludes that a nonapplicant cannot meet this requirement if he/she had no knowledge of the employer's discriminatory practice because he/she would have no actual or threatened injury.

This Court disagrees. The cases Warren cites as support for this assertion are distinguishable from the issue at hand—they all involve determinations of appropriate class representatives and members for purposes of class action suits or relate to general concepts of standing.[4]

■ Finally, the Court finds persuasive, notwithstanding Warren's attempts to distinguish them, the cases cited by the Government in support of its basic premise that retroactive relief may be available to deterred nonapplicant victims of an employer's discrimination. Specifically, the Court finds as persuasive the primary case the Government relies upon, *EEOC v. Andrew Corp.*, 54 Empl.Prac.Dec. (CCH) ¶ 40,166, 1990 WL 92820 (N.D.Ill.1990).

The district court in *Andrew* allowed retroactive relief to be awarded to blacks who had been discriminated against by the employer with regard to recruitment and hiring. The *Andrew* court was also confronted with the employer's argument that retroactive relief should not be allowed because of the difficulty involved in determining "who, from among Blacks in the general public, would have applied to and been hired but for word-of-mouth recruitment." *Id.* at 63,784. The court rejected this argument, reasoning that the employer could not gain an advantage by the success of its discriminatory recruitment policy and the uncertainty as to victims it created. *Id.*

■ Although, as Warren points out, *Andrew* involved word-of-mouth recruiting as well as hiring, the court's decision that retroactive relief should be available to the victims has application to the present matter. At trial the Government may have a difficult task showing that the 1989 firefighter recruitment disparately treated blacks.[5] However, if the Government can prove disparate treatment, the fact that the victims of such discrimination may be difficult to ascertain should not automatically serve as a bar to the granting of retroactive relief to those victims who can meet

4. For example, Warren relies on the following cases: *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (plaintiffs not proper class representatives in Title VII class action where they were not qualified for applicable jobs and would not have been hired in any event); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (Article III standing requires plaintiff to have a "distinct and palpable injury" to himself); *Thompson v. Board of Education of Romeo Community Schools*, 709 F.2d 1200 (6th Cir.1983) (plaintiff teachers, as a class, do not have standing to sue school boards for which they had not worked).

See also *Harris v. General Development Corp.*, 127 F.R.D. 655 (N.D.Ill.1989) (class consisting of potential job applicants is too imprecise to be certified in a class action suit); *Washington v. Walker*, 75 F.R.D. 650 (S.D.Ill.1977) (class consisting of all black males who were deterred from applying for state trooper positions is too indefinite for class action case).

5. As Warren correctly points out, *Andrew* involved only word-of-mouth recruiting. In the case at bar, however, it is undisputed that Warren engaged in widespread advertising with regard to the 1989 firefighter recruitment. To wit, Warren advertised the recruitment in the *Free Press*, a paper of general circulation in the Detroit area.

the burden of proving they were, in fact, victims of the discrimination.

### III. CONCLUSION

The Government's motion for a preliminary injunction is denied. However, if, at trial, the Government can prove Warren disparately treated blacks with regard to the 1989 firefighter recruitment, and if victims of such disparate treatment are identified and can prove their victim status, retroactive relief may be available to them as a remedy.

An Order reflecting the above shall issue forthwith.