Judith K. GRUBBS, Plaintiff,

v.

MEDICAL FACILITIES OF AMERICA,
INC., Defendant.

Civ. A. No. 94–0029–D.

United States District Court,
W.D. Virginia,
Danville Division.

Jan. 6, 1995.

Susan E. Perry, Virginia Legal Aid Soc., Inc., Danville, VA, for plaintiff.

Diane Marie Baun, Woods, Rogers & Hazlegrove, P.L.C., Roanoke, VA and Joseph

---

Walton Milam, Jr., Woods, Rogers & Hazelgrove, P.L.C., Danville, VA, for defendant.

## MEMORANDUM OPINION

KISER, Chief Judge.

Plaintiff has brought this action under section 504 of the Rehabilitation Act of 1973. Presently, the case is before me on the defendant's motion for summary judgment. After considering the arguments of counsel on that motion, I am of the opinion that it should be granted.

### Facts

Plaintiff is 48-years-old and weighs around 330 pounds. She has multiple sclerosis. Defendant Medical Facilities of America ("MFA") operates two nursing homes: Camelot Hall Nursing Home ("Camelot") and Riverside Health Care Center ("Riverside"). Plaintiff alleges MFA denied her admission to Camelot and Riverside because of her weight and medical condition.

The plaintiff's sister, Virl Campbell Guill, is plaintiff's attorney-in-fact. Guill assisted plaintiff in finding a nursing home. She testified Riverside offered a room in early 1993, but plaintiff was not ready to go at that time. Later, in July 1993, Camelot offered a room but because of delays in funding, the space filled with another individual. After plaintiff was admitted to Danville Regional Medical Center ("DRMC") in August 1993, she never completed an application to either facility.[1]

Plaintiff went to DRMC for treatment of the multiple sclerosis. Plaintiff's condition worsened after admission to the hospital. Upon her discharge from DRMC, the plaintiff suffered from numerous medical conditions. Her weight had reached 359 pounds, she had lost sight in one eye, and she was essentially immobile. She was on a number of different medications. As a result of her condition, plaintiff required specialized care, termed "subacute" care.[2] Camelot and Riverside are not equipped nor licensed to provide subacute care. Instead, DRMC called Avante at Lynchburg ("Avante"), which offered subacute care.

She, or someone on her behalf, applied for Medicaid reimbursement for subacute care. This application met the criteria of the Virginia Department of Medical Services ("DMAS") for subacute care, thus entitling plaintiff to Medicaid payment for her care. Plaintiff, or someone on her behalf, accepted the Medicaid reimbursement for subacute care provided at Avante. See Admissions 1–5.

Eventually, plaintiff left Avante and went to Roman Eagle Memorial Home in Danville ("REMH"). Plaintiff did not apply for admission at this time to either Camelot or Riverside. See Admissions 24 & 25.[3] As became clear at oral argument, admission to REMH was obtained via a settlement of threatened litigation after REMH initially denied admission to plaintiff.

The plaintiff submits an affidavit in an attempt to create a genuine issue of material fact. She claims her medical care needs have remained largely the same between the summer of 1993 and the present time. She also claims she did not get all of the extra care that Avante offered. She states that her stay at Avante did not improve her condition that much and that she did not request the physical therapy Avante offered. In summary, plaintiff argues that the best evidence that Camelot and Riverside could have provided care to the plaintiff is that REMH is doing so now.

---

1. See Admissions 17 & 18. The defendant properly served Requests for Admission. Plaintiff failed to respond to these requests. Thus, pursuant to F.R.Civ.P. Rule 36(a), and in view of the failure of plaintiff to seek amendment or withdrawal, the requests are deemed admitted.

2. Subacute care defines a level of care approximately four times greater than that offered at a regular nursing facility. The best definition of subacute care is in monetary terms. While at the Avante subacute care facility, Medicaid paid over $400 per day for plaintiff's care. Regular nursing home care reimbursement rates run under $100 per day.

3. The Requests for Admission refer to 1993 as the year plaintiff left Avante. This is incorrect. She left in 1994. This minor typographical error, however, does not alter the effect of the admission, which clearly requested an admission regarding what *plaintiff* did *"after* ... [leaving] Avante at Lynchburg" (emphasis added).

### Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.) (citations omitted), *cert. denied*, —— U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 24, *and cert. denied*, —— U.S. ——, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994).

### Rehabilitation Act Requirements

■ Section 504 of the Rehabilitation Act provides that:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C.A. § 794 (West Supp.1994).[4] In order to be an "otherwise qualified" individual a person must be able to meet all of the program's requirements in spite of the person's handicap. *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). The *Davis* approach has been tempered in its application, otherwise no reasonable requirement would ever violate section 504. *See Pottgen v. Missouri State High School Activities Assoc.*, 40 F.3d 926, 929 (8th Cir.1994).

■ In the employment context, the Fourth Circuit has required courts to inquire first whether the person can perform the essential functions of the job in question, and second whether the requirements for the position actually measure the functions. *Pandazides v. Virginia Board of Education*, 946 F.2d 345, 349 (4th Cir.1991). The Fourth Circuit also requires an evaluation of whether modifications could be made to allow the person to perform the job. *Id.* In other contexts, courts have held that the plaintiff must show he meets a program's necessary or essential requirements. *Pottgen*, 40 F.3d at 929. Although an obligation to make a reasonable accommodation exists, an accommodation is not reasonable when it imposes an undue financial hardship on a grantee or requires a fundamental alteration in the nature of the program. *School Board of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987); *Pottgen*, 40 F.3d at 930.

### Discussion

■ I agree with the defendant that the plaintiff was not "otherwise qualified" for admission to either the Camelot or Riverside facility.[5] Neither facility offered subacute care. By plaintiff's own admission, this is the type of care she required. The form of that admission is the application for and receipt of Medicaid reimbursement for subacute care. Plaintiff attempts to avoid this central fact by arguing that while she was *eligible* for Medicaid subacute care payments, she did not *require* that level of care.

Plaintiff's position is unpersuasive. "Plaintiff in the case *sub judice* cannot speak out of both sides of her mouth with equal vigor and credibility before this court." *Reigel v. Kaiser Foundation Health Plan of N.C.*, 859 F.Supp. 963, 970 (E.D.N.C.1994). *See also August v. Offices Unlimited, Inc.*, 981 F.2d 576, 581–82 (1st Cir.1992) (holding that statements plaintiff made to obtain disability insurance were binding admissions that he

---

4. There is no dispute in the record that Camelot and Riverside are subject to the requirements of the Rehabilitation Act.

5. I also have doubts, based on the admissions, that plaintiff ever completed the necessary steps

to be considered for admission. However, construing the record in the light most favorable to the plaintiff, I conclude that she did take the necessary steps.

could not perform the essential functions of his job). At the same time plaintiff maintains that any nursing facility could have cared for her, she applied for and accepted Medicaid reimbursement for a type of care that only Avante could offer. She cannot now seek to alter her position in an attempt to show that she was otherwise qualified to enter either of MFA's facilities in Danville.

An essential element in the admissions to Camelot and Riverside is the level of care the patient will require. Plaintiff could not meet this essential requirement and is, therefore, not otherwise qualified. In order for Camelot and Riverside to have admitted plaintiff, they would have had to become subacute care providers. Such an accommodation is clearly not required under *Arline,* nor would the regulations implementing Title III of the Americans with Disabilities Act require such an accommodation. Title III prohibits discrimination in the provision of, among other things, services. *See* 42 U.S.C.A. § 12182(a) (West Supp.1994). The comment to the regulation notes that "the rule does not require modifications to the legitimate areas of specialization of service providers." 56 Fed. Reg. 25565 (July 26, 1991).[6]

Plaintiff's attempt at saving her case by reference to REMH's actions is also unpersuasive. Just because REMH now cares for the plaintiff does not mean that in October 1993, Camelot or Riverside could have cared for her. This is especially so in light of the DMAS approval of Medicaid reimbursement, a fact that indicates the degree of care plaintiff required. Indeed, plaintiff's position with respect to REMH is undercut given that it initially denied her admission to its facility and then admitted her, pursuant to an agreement that terminated threatened litigation and resolved pending administrative complaints.

In any event, it is undisputed that the plaintiff did not apply to either of MFA's facilities after discharge from Avante. This is consistent with the plaintiff's view of REMH as her first choice in a nursing facility. Consequently, plaintiff's failure to apply to the facilities after discharge from Avante precludes any finding of discrimination. *Cf. Robinson v. Montgomery Ward & Co.,* 823 F.2d 793, 796 (4th Cir.1987) (holding that because plaintiff did not apply for a job he could not be rejected in a Title VII case), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988).

### Conclusion

For the reasons stated above, I find that there is no genuine issue of material fact. On this record, the defendant is entitled to judgment as a matter of law. Therefore, the defendant's motion for summary judgment will be granted.

An appropriate Order will be entered.

### *ORDER*

For the reasons stated in the Memorandum Opinion issued contemporaneously herewith, it is hereby ADJUDGED and ORDERED that the defendant's motion for summary judgment be GRANTED. Any other pending motions are hereby DISMISSED as moot. The Clerk is directed strike this case from the docket of this Court.

The Clerk is further directed to send a certified copy of this order to all counsel of record.

---

**6.** Also persuasive authority is *Nichols v. St. Luke Center of Hyde Park,* 800 F.Supp. 1564, 1570 (S.D.Ohio 1992) (holding that no Rehabilitation Act violation occurred when nursing home discharged patient with behavioral problems because no reasonable accommodation existed). "If an individual's handicap cannot be accommodated in a way that assures a safe environment when he participates in a program, the program provider is justified in excluding him from participation." *Id.* In this case, the administrators of MFA's facilities were concerned, among other things, with the staff demands plaintiff would place on the facility. Clearly, if more staff was required to assist plaintiff, less staff would be available to assist other patients, thus potentially threatening those other patients' safety.