**A QUAKER ACTION GROUP et al., Appellants,**

v.

**Cecil D. ANDRUS, Secretary of Interior, et al.**

**No. 75–2203.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 17, 1977.

Decided April 22, 1977.

As Amended May 9, 1977.

---

Joseph L. Rauh, Jr., Washington, D. C., with whom James F. Fitzpatrick and Scott B. Schreiber, Ralph Temple and Paul R. Smollar, Washington, D. C., were on the brief, for appellants.

Nathan Dodell, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Robert N. Ford, Derek I. Meier, Asst. U. S. Attys., and Gil Zimmerman, Asst. U. S. Atty., retired, Washington, D. C., were on the brief, for appellees.

Before McGOWAN, LEVENTHAL and MacKINNON, Circuit Judges.

Opinion PER CURIAM.

Separate Opinion filed by Circuit Judge MacKINNON.

PER CURIAM:

The plaintiffs appeal from the order on mandate entered by the district court on November 21, 1975, pursuant to our order and opinion in *Quaker Action IV*,[1] 170 U.S. App.D.C. 124, 516 F.2d 717, and the ensuing mandate of this court, which was received in the district court on July 2, 1975. The issue before us is whether the district court's order conforms to our mandate.[2] In this opinion, which will presumably be dubbed *Quaker Action V*, we dispense with a conventional statement of the background of this case, which is available in our prior opinions.

1. Plaintiffs contend that the district court erred in allowing the 750 person limit on the White House sidewalk gatherings to remain an absolute limit without waiver provisions. The government was also of the view that there were no waiver provisions as of the present time, but argued that this was permissible under our opinion.

In our view the district court's order, correctly interpreted, does provide for waivers of the sidewalk limitation. We recognize that paragraph 2(c) of the district court's order is cast in terms of a delay before the Secretary will be required to establish a settled waiver procedure. It provides:

Once such a waiver procedure is established for Lafayette Park, as required by (b) above, and the Secretary's experience thereunder over a reasonable period of time indicates the practicability thereof, the Secretary shall by further amendment to 36 C.F.R. § 50.19 consider the extension of a like waiver to the mini-

mum limitation applicable to the White House sidewalk. (App. at 48).

Paragraph 2(d), however, does provide for an interim waiver procedure:

Pending the amendments to 36 C.F.R. § 50.19 as provided in this Order, there shall be effective a limitation of 750/3000 on demonstrations on the sidewalk in front of the White House and in Lafayette Park respectively, unless the limitation shall be waived by the Secretary for good cause shown, and during this period if application is made for waiver and refused by the Secretary, the applicant may apply to this Court in this cause for a waiver.

■ We read paragraph 2(d) to provide that during the period prior to the amendment contemplated in paragraph 2(c), the limitation on sidewalk demonstrations may be waived by the Secretary and, in the event of refusal, by the district court. Hence we need not consider whether it would have been reasonable or in accordance with our mandate to have continued for some period of time with an absolute ban against waiver.

■ However, we think that plaintiffs have identified a defect in the district court's order insofar as it insists that the Secretary's amendment prescribing an ongoing waiver procedure must be dependent not only on the issuance of a waiver procedure for Lafayette Park but in addition "the Secretary's experience thereunder over a reasonable period of time indicat[ing] the practicability thereof." In our view the establishment of a waiver procedure for Lafayette Park, and its effectiveness for a reasonable period of time, is a sufficient reason for the Secretary to give consideration to a like waiver for the White House sidewalk even assuming that no waivers for

---

1. So named because it was the fourth appeal decided by this court in the litigation styled *A Quaker Action Group v. Morton*. The three previous appeals are reported as *A Quaker Action Group v. Morton*, 148 U.S.App.D.C. 346, 460 F.2d 854 (1971) (Quaker Action III); *A Quaker Action Group v. Hickel*, 139 U.S.App. D.C. 1, 429 F.2d 185 (1970) (Quaker Action II); *A Quaker Action Group v. Hickel*, 137 U.S.App.

D.C. 176, 421 F.2d 1111 (1969) (Quaker Action I). A summary of the procedural history may be found in 516 F.2d at 721–23.

2. We denied motions by the plaintiffs for summary reversal and by the government for summary affirmance and set the matter for oral argument.

use of the Park have been granted. Consideration in this context would call for implementation unless facts are brought out to show that such implementation would be impractical.

■ 2. Plaintiffs, as appellants, have attacked the regulations issued by the Secretary on the grounds that some provisions effectively discriminate against demonstrations because of their expressive content and others provide for a waiver procedure that is unduly burdensome. We do not have jurisdiction to consider these claims on this appeal. The appeal is from the district court order of November 21, 1975. The challenged provisions appeared in Interior Department National Park Service regulations that issued in March 1976 pursuant to a notice of December 1975.

Plaintiffs' counsel advised at oral argument that there may be other attacks on these regulations, in respects not brought before us at this time. However, even as to the problem now identified, plaintiffs were required to pursue their remedy in district court, to complain that the regulations as issued by the Secretary of the Interior are not in conformity with the order issued by the district court pursuant to the mandate of the court of appeals. We disclaim cognizance of the issue at this time even though it is the language of the opinion of this court that is the ultimate base for the district court's order. Since the district court's order of November 21, 1975 in effect merely restated the language of our opinion, it is not subject to attack as contravening that opinion.

The government has not pressed this jurisdictional point, instead seeking a ruling that the regulations as issued are valid. But the issue of the validity of the regulations, in terms of compliance with the order and mandate, may depend upon a factual presentation concerning the intention and scope of the regulations, and a justification that goes beyond mere intuition and common sense and contains testimony which is subject to exploration and probing. *See generally* the discussion in our opinions, *Quaker Action II* and *III.*

3. We come finally to the issue of costs. In the order under appeal the district court declined to award costs to the plaintiff.

■ So far as the costs incurred upon appeal are concerned, we are of the view that the plaintiffs were the "prevailing party" on appeal in *Quaker Action I, II* and *III,* entitled to recover 100% of their costs on appeal. As to *Quaker Action IV,* there were some respects in which the government prevailed. However, we think that plaintiffs were the predominantly prevailing party. We have concluded that plaintiffs shall recover 75% of the costs incurred on the appeal in *Quaker Action IV.*

■ As to the current appeal, we are in effect dismissing sua sponte plaintiffs' appeal on two points for lack of jurisdiction. Plaintiffs have a measure of relief on their first point, on availability of waiver. On the issue as to costs we have agreed substantially although not entirely with plaintiffs. It is our judgment that plaintiffs should recover 30% of the costs incurred in the appeal in *Quaker Action V.*

We remand for entry of an appropriate order. On the issue of costs incurred in the district court, it is our contemplation that it will employ the approach used by this court.[3]

*So ordered.*

MacKINNON, Circuit Judge:

My views on this entire subject are set forth at length in my opinions on the prior appeals and because of their dissenting content I decline to participate in expressing any opinion as to how the prior decisions of the majority of the panel should be interpreted. I do, however, concur in the *Per Curiam* statement on the issue of costs.

In closing I want to comment on waiver and add some general comments. The *Per*

**3.** The government has not asked for costs. Our estimates and order contemplate that no costs will be taxed for the government.

*Curiam* opinion expresses a preference for the establishment of waiver procedures for the 750/3000 limits established for the White House sidewalk and Lafayette Park. As I have remarked previously I consider these limits to be too high as a general matter—they substantially exceed the recommendations of acknowledged security experts—and in my opinion are myopic to the real problem. They focus shortsightedly on the number of demonstrators the sidewalk and the park can contain rather than on the extent of the security threat that the White House security forces should reasonably be called upon to resist or repel or on the security threat that may in certain circumstances be posed by very few individuals.[1]

The majority have made the mistake throughout of deciding that the security threat can be determined by an adding machine. They focus on the mere numbers of individuals rather than the seriousness of the threat that may be posed by the character of the demonstration or by a few violence-prone individuals. In short the majority have compelled unreasonable regulations—especially so because they are rigid on the down side. The numbers of permissible demonstrators is a wooden figure that the majority would not permit to be reduced. Concern is even expressed for waiving the limits to allow *greater* numbers—and in certain circumstances that may have some justification—but no consideration is given to *reducing* the number *below* the fixed 750/3000 limits when the actual demonstrators in those, or even lesser quantities, pose a greater than usual threat to the security of the White House.

This is a glaring weakness in the decision of the majority, but its authority is limited. No court has authority to fix an *absolute* limit that a subsequent court order cannot alter if a proper showing is made of a substantial security threat.[2] The court is not Congress. Its order is not a statute, but only a determination of a *present* con-

troversy, and it cannot foreclose modification of the regulations to meet subsequent future emergencies. It has caused the regulations to be written in a manner strongly indicative of legislative usurpation but it cannot carve the regulation in granite. The police always have inherent authority under their constitutional police power, which no court can take away from them, whenever an actual threat develops to the security of the White House, instantly, and without appealing to any court, to clear the sidewalk and the park or to reduce the threat by dispersing some of the demonstrators. That is the only consolation that remains after five decisions.

---

1. Only recently in downtown Washington just 12 people kidnapped over 134 people and held them hostage in three separate public buildings for 38 hours. This is a good example of how a large threat may be posed by small numbers.

2. Certainly a permit can be denied completely if a substantial security threat is involved.