**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HOWARD J. FOSTER,
Plaintiff-Appellant,

v.                                                                  No. 96-1332

SARA LEE INTIMATES,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge.
(CA-94-213-3-MU)

Submitted: April 30, 1997

Decided: May 22, 1997

Before HAMILTON, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Dismissed by unpublished per curiam opinion.

_____

**COUNSEL**

Howard J. Foster, Appellant Pro Se. W. R. Loftis, Jr., Robin Elizabeth
Shea, CONSTANGY, BROOKS & SMITH, Winston-Salem, North
Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Howard J. Foster appeals from the district court's order dismissing his employment discrimination action. Foster filed this action against Sara Lee Intimates (Sara Lee) alleging that Sara Lee refused to make a reasonable accommodation of his religious beliefs and that he was discriminated against on the basis of his race. We affirm.

I.

Foster, a black male, is a Seventh Day Adventist. He believes that the Sabbath, from Friday at sundown until Saturday at sundown, is sacred and that work should not be performed during that time. In 1992, Uniforce, a temporary employment agency, assigned Foster to a job at Sara Lee's facility in Kings Mountain, North Carolina, after informing Sara Lee about Foster's inability to work during the Sabbath. Foster primarily worked as a lift operator. He worked the third shift, which ran from 11 p.m. until 7 a.m., but did not work the shift that began Friday at 11 p.m. and ended Saturday at 7 a.m. In late 1992 or early 1993, Foster began having conversations with plant management about getting a permanent job with Sara Lee. In January 1993, however, Sara Lee terminated the employment of all temporary employees in Foster's building, including Foster. Sara Lee subsequently decided to hire some temporaries back as "SLI temporaries." In February 1993, Foster applied for employment as a SLI temporary and received an offer of employment. Foster began work as a SLI temporary in March 1993. He worked as a loader/puller on third shift. As with his previous Uniforce job, he did not work the shift that began Friday at 11 p.m. and ended Saturday at 7 a.m.

Management subsequently sent a memorandum to all temporary employees offering them the opportunity for permanent employment. In June 1993 Foster returned his memorandum asking to be considered for a custodial position. Another SLI temporary, Steven Blalock, returned his memorandum a few days earlier requesting consideration for the same position. Although Blalock was working as an SLI temporary like Foster, Blalock was already performing custodial work and was doing so satisfactorily. The first available permanent custo-

2

dial position was on third shift. Blalock was offered this position and he accepted it in July 1993. About the same time that Blalock took the third shift position, a first shift custodial position opened, which ran from 7 a.m. until 3 p.m. Under Sara Lee's policy, Blalock should have had the first opportunity to move to the more favorable shift because he was already in that position but on a different shift.

Because of company error, however, the first shift position was offered to Foster, and Blalock was not given the first opportunity to accept that shift. When Blalock learned of the situation, he made it known that he would have waited for the first shift position if he had known that it would have been available only a few days after he had taken the third shift position. Sara Lee subsequently allowed Blalock to take the first shift position and offered Foster the third shift position.

Foster accepted the third shift position and filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). He alleged that he was required to take the third shift position because of his race. He also claimed that Sara Lee failed to reasonably accommodate his religious beliefs. In August 1993, another first shift custodian resigned and Foster moved into that position. He was in that position until his voluntary resignation in October 1994. He filed this suit and the district court granted Sara Lee summary judgment.

II.

Title VII requires employers to make reasonable accommodation for the religious observances of its employees if this can be done without undue hardship on the business. 42 U.S.C.§§ 2000e-2(a)(1), 2000e(j) (1994).

> To establish a prima facie religious accommodation claim, a plaintiff must establish that: (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirements.

3

Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1019 (4th Cir. 1996) (quotation omitted). "If the employee establishes a prima facie case, the burden then shifts to the employer to show that it could not accommodate the plaintiff's religious needs without undue hardship." Id.

Foster's religious accommodation claim fails because there was no conflict between his religious belief and an employment requirement. Foster conceded that he was never required to work during the Sabbath and was never penalized for taking the Sabbath off. Foster also claims that while he was a temporary employee management made comments to him indicating that he would be able to get a permanent job at Sara Lee if he was willing to work during the Sabbath. However, these conversations do not state a religious accommodation claim because Foster's religious belief was accommodated. He was never required to work during the Sabbath. Thus, there was no conflict between his religious belief and an employment requirement. See Chalmers, 101 F.3d at 1019. Although he was laid off in the beginning of 1993, so were all the temporaries. Further, a Title VII claim based on these conversations is time-barred because they took place more than 180 days before Foster filed his EEOC charge and he has not established a continuing violation. See 42 U.S.C.A. § 2000e-5(e)(1) (1994); Nealon v. Stone , 958 F.2d 584, 590 n.4 (4th Cir. 1992); Woodard v. Lehman, 717 F.2d 909, 915 (4th Cir. 1983).

Lastly, Foster claims that two managers used profanity in his presence. These alleged discriminatory statements are not sufficient to maintain a claim because Foster does not show that they are related to an adverse employment decision. See EEOC v. Clay Printing, 955 F.2d 936, 941-42 (4th Cir. 1992); Robinson v. Montgomery Ward, 823 F.2d 793, 797 (4th Cir. 1987); Figures v. Board of Pub. Utils., 967 F.2d 357, 360-61 (10th Cir. 1992). Therefore, Foster has not established a religious accommodation claim.

III.

Foster also claims that Sara Lee discriminated against him based on his race. Foster points to the shift-trading situation involving Blalock that occurred in the summer of 1993 as evidence of race discrimination. In employment discrimination cases, the plaintiff bears

4

the burden of establishing a prima facie case of discrimination before the burden of proof shifts to the defendant to show a legitimate, non-discriminatory reason for its action. See Alvarado v. Board of Trustees of Montgomery Community College, 928 F.2d 118, 121 (4th Cir. 1991). Foster's claim fails because Sara Lee had a legitimate, nondiscriminatory reason for offering the first available permanent custodial position to Blalock and subsequently offering him the first shift custodial position. See id.; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

Blalock was the first to be offered a permanent custodial position because he had performed in that position as a temporary and had done so satisfactorily. Further, Blalock applied for the position before Foster. Sara Lee subsequently offered the permanent, first shift custodial position to Blalock because of its company policy. Under the pertinent policy, when an opening occurs on a particular shift, the employee already in that position but on a different shift has the first opportunity to move to the more favorable shift. Foster has not shown that Sara Lee's reason for offering Blalock the first permanent custodial position or the first shift position was pretextual. See Burdine, 450 U.S. at 252-53. Although Foster may have had more seniority as a temporary employee and experience was not a requisite for the custodial position, Foster does not show a causal connection between the employment decision and his race. See Autry v. North Carolina Dep't of Human Resources, 820 F.2d 1384, 1386 (4th Cir. 1987).

Next, Foster claims racial discrimination because of discriminatory comments made by co-workers. However, Foster has not shown that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of his employment and create a hostile or abusive working environment. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); White v. Federal Express Corp., 939 F.2d 157, 160 (4th Cir. 1991). Further, Foster does not show that the alleged incidents somehow affected an employment decision. See Clay Printing Co., 955 F.2d at 941-42; Montgomery Ward & Co., 823 F.2d at 797.

Lastly, Foster claims that after he became a custodian, Sara Lee instituted several changes that adversely affected his working conditions based on his race. However, Foster fails to establish disparate

5

treatment because he does not show that the changes applied only to him based on his race. See McDonnell Douglas Corp., 411 U.S. at 800-04. Therefore, Foster has not established a racial discrimination claim.

IV.

Because Foster has not established employment discrimination, we deny in forma pauperis status and dismiss the appeal. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

DISMISSED